The Surrogate.
Mary J. Morgan, late executrix of this testator’s estate, having died on the 3rd of July last, leaving its assets in part unadministered, Mrs. Frances E. Quintard, decedent’s eldest daughter and a legatee under his will, has applied for the issuance of joint letters of administration, with the will annexed, to herself, her husband George W. Quintard, and James Rintoul.
The right to receive such letters as are here applied for is granted, by § 2643 of the Code of Civil Procedure, to persons interested in' a testator’s estate, according to the following order of priority:
*170 “1st. To one or more of the residuary legatees who are qualified to act as administrators.
2nd. If there is no such residuary legatee, or none who will accept, then to one or more of the principal or specific legatees so qualified.”
The will of this testator contained but one dispositive clause. That clause gave his entire estate “ as provided by the laws of the State of New York in case of intestacy.”
The. persons who thus became entitled to share in the testator’s bounty, and the respective interests that they had in the estate upon probate of the will, were as follows : Mary J. Morgan, widow, 30 ninetieths; Frances E. Quintard, daughter, 12 ninetieths; Maria L. Whitney, daughter, 12 ninetieths; Richard J. Morgan, grandson, 12 ninetieths; Montaigu Morgan, grandson, 4 ninetieths; Wm. H. Morgan, grandson, 4 ninetieths; Laura L. La Montague, granddaughter, 4 ninetieths; Henry W. Harris, great grandson, 3 ninetieths ; Henry H. Wilson, great grandson, 6 ninetieths; Maria L. Harris, great granddaughter, 3 ninetieths.
It is evident that the above named persons, though their interests under the will vary in quantity, are legatees nevertheless of precisely the same grade and character. It cannot be said that any one of them, as distinguished from any other, is a “ residuary ” or a “ specific ” legatee. Nor is it true that any of them, as distinguished from any other, is one of the “ principal legatees.” For the word principal when read in the light of the context, is evidently not used as a synonym for chief or most important, but has the force and effect rather of the word general, and is *171 meant to be descriptive of all legatees who are neither specific nor residuary.
I hold, therefore, that no one among this testator’s living beneficiaries has any absolute legal right, as such, to be chosen in preference to any other, as administrator, c. t. a., of this estate, except as hereinafter indicated. Of those beneficiaries Mary J. Morgan, Richard J. Morgan, Montaigu Morgan and Henry H. Wilson are dead. Henry W. Harris and Maria L. Harris are personally incompetent because of their infancy, and any claim that might be made by their guardian is secondary to the claim of an adult legatee legally qualified (R. S., part 2, ch. 6, tit. 2, § 33; 3 Banks, 7th ed., 2291; Cottle v. Vanderheyden, 11 Abb., N. S., 1.7). The selection must therefore be made from the persons following, unless all of them waive their claims: Mrs. Quintard, Mrs. Whitney, William H. Morgan and Laura L. La Montague.
The petition of Mrs. Quintard is not, I understand, opposed by Mrs. Whitney. Mrs. Montague is not herself an applicant for letters. Mr. W. H. Morgan applies for his own appointment as co-administrator with the petitioner.
The practical questions for decision, are, therefore, these: 1. Of the persons entitled, shall I appoint Mrs. Quintard, or Mr. W. H. Morgan, or both ? 2. Whoever may be selected among the persons entitled, shall any person not entitled be joined in the administration as prayed for by several of the parties in interest ?
And first, as between Mrs. Quintard and Mr. Morgan, the claim of the former is supported by this very *172 important consideration: that she has much the larger interest in the estate. Schouler, in his treatise on Executors and Administrators (§ 124), declares that, when the selection of an administrator, c. t. a., is uncontrolled by statute, the rule is to grant letters “ to the claimant having the greatest interest under the will.”
Our own statute is founded on a practice which was established by the Ecclesiastical courts, and which is thus expounded by Sir John Nichol in Tucker v. Westgarth (2 Add., 352): that where it is discretionary in the court to grant administration to either of two claimants, it always decrees it, ceteris paribus, to that claimant who has the greater interest in the effects to be administered. See, also, to same effect, Elwes v. Elwes (2 Lee's Cas., 573). Redfield, in his Law of Wills, says (vol. 3, p. 97): “In the English courts of probate, the general rule seems to have been to give, administration first to the party entitled to the residue of the goods, and, among those of equal degree, to the one in seniority, other things being equal.”
Tried by this test, it is manifest that the claim of the petitioner is superior to that of her rival applicant. Those who have appeared in opposition, and who are themselves legally competent to receive letters, have much less interest under the will than those legally competent who support or approve her application. And while there is on the part of several persons now interested in the estate, including the representatives of Mrs. Charles Morgan, some opposition to Mrs. Quintard’s appointment, except upon *173 certain conditions as to co-administration, which she has not indicated her willingness to accept, it is nevertheless true that her application is favored by a much larger interest than the interest which has declared itself on the side of Mr. W. H. Morgan.
I should, therefore, have no hesitation whatever in granting her petition but for the objection that her relations to a proceeding now pending in the Court of Appeals, involving the construction of this testator’s will and the ascertainment of the amounts to which his several legatees are entitled thereunder, make her an unfit person to be intrusted with the sole charge of the estate. As to this objection it may he said, in the first place, that the facts on which it is founded do not constitute a disqualification under the statute prescribing the qualifications of administrators. She could insist, in spite of it, upon' her absolute right to letters if she were, for example, sole residuary legatee, or if the three persons whose statutory status is the same as her own were all dead, or were all unwilling to administer. The standard of incompetency fixed by the written law can alone be applied in passing upon the qualifications of an applicant to whom that law has given priority. And indebtedness to the estate or personal interest in its. administration is not of itself ground of disqualification (Churchill v. Prescott, 2 Bradf., 304).
I might, very likely, regard Mrs. Quintard’s relations to the controversy in the Court of Appeals as sufficient, other things being equal, to warrant the selection in preference to herself of some person equally entitled, against whom that objection could *174 not be urged, if there were any such person in existence. But there is not; and as between Mr. Morgan and herself, if either is to be entrusted with the administration to the exclusion of the other, I am disposed to give her the preference.
Now it is not, in my judgment, desirable that letters should issue to the two in conjunction. There is little reason to believe that their counsels would be harmonious, or that their united action would result in measures conducive to the best interests of the estate. Besides, if Mrs. Quintard shall become sole administratrix, I cannot think that the weight of her official authority will become practically oppressive to the other legatees who now object to her appointment. Those objectors are all parties to the proceeding in the Court of Appeals, and are represented by able and zealous counsel.
The issues involved have already been the subject of controversy before a referee, the Surrogate and the Supreme court, and have given rise to searching and elaborate discussion. Under the circumstances, it is extremely unlikely that the parties litigant would or could be helped by the appointment of an administrator in sympathy with their own contention, or would or could be injured by an appointment from the ranks of the opposition.
There remains to be considered the question, whether a stranger to an estate can be granted letters of administration, c. t. a., jointly with a person entitled to such letters under § 2643 (supra). It is an every day -practice, as regards estates of intestates, to appoint strangers as co-administrators upon the nomina *175 tion of the person entitled to letters. This practice is in accordance with the provisions of E. S., part 2, ch. 6, tit. 2, § 34 (3 Banks, 7th ed., 2291), which declares that “administration may be granted to one or more competent persons, although not entitled to the same, with the consent of the person entitled to be joined with such persons, which consent shall be in writing and be filed in the office of the Surrogate.”
Whether this section applies to cases of administration with the will annexed, does not seem to have been decided in any reported case, and a doubt is now thrown upon the matter, by the fact that, in the main, the practice and procedure in respect to the appointment of the latter class of officers is now regulated by the Code of Civil Procedure, while as to the administration of estates of intestates the provisions of the Eevised Statutes are still in force. This doubt will disappear, however, upon close examination.
Section 34 is one of the original provisions of article 2, which, from the time of its enactment, has borne this title: “ Of granting letters of administration with the will annexed, and in cases of intestacy.” 1 agree with Surrogate Bradford (Ex parte Brown, 2 Bradf., 22) in holding that the term “ administrator,” as used throughout the whole of title 2 of the 6th chapter, was intended to include administrators with the will annexed, except in cases where the context plainly indicates the contrary.
That strangers could be joined in administrations, c. t. a., before the Code came upon the statute book I have no doubt. Now there is nothing in the Code inconsistent with a continuance of that practice, and *176 § 34 is still unrepealed, and still forms a part of article 2.
It will be observed that the Surrogate has no authority, under that section, to depart from the rule of selection established by § 2643 of the Code, except to the extent that the person entitled shall consent in writing to the appointment of co-administrators.
I cannot, therefore, of my own motion, grant letters to the administrator of the late executrix, however strongly I might be inclined- to do so. I may add that, even apart from the restrictions of the statute, the Surrogate would not be justified in forcing, upon a person entitled, an association with a stranger not selected by himself (Peters v. Pub. Administrator, 1 Bradf., 200-207, and cases cited).
Letters may issue to Mrs. Quintard, Mr. Quintard, and Mr. Rintoul. If the petitioner shall file a written consent to Mr. Moir’s inclusion, he also may be granted letters.